IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Charles B. Byers, | ) | Civil Action No.:2:11-00020-RMG-BHH |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Warden Cecilia Reynolds, | ) | |
| | ) | |
| Respondent. | ) | |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment.  (Dkt. No. 21; see also Dkt. No. 20.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on or about January 7, 2011. (Dkt. No. 1.) On May 6, 2011, the Respondent moved for summary judgment (Dkt. No. 21; see also Dkt. No. 20.) By order filed May 9, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 22.) On or about July 13, 2011, the Petitioner filed a response opposing the Respondent's Motion for Summary Judgment. (Dkt. No. 27.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at the Kershaw Correctional Institution ("KCI"). On June 30, 1999, Petitioner was indicted in Berkeley County for murder. (App. 445.) A jury trial was held on December 6, 8, and 9 of 1999, before the Honorable Daniel F. Pieper. The Petitioner was represented by Mitch Lanier. (App. 1.) On December 8, 1999,

the jury convicted Petitioner as charged, and on December 9, 1999, Judge Pieper sentenced him to life imprisonment. (App. 1; 81; 446.)

The Petitioner timely filed a Notice of Appeal, and an appeal was perfected by Robert M. Dudek, Esquire, of the South Carolina Office of Appellate Defense. (App. 305; App. 306-18.) In an Anders[1] brief, appellate counsel argued the judge erred in submitting the Petitioner's inculpatory statements to the jury where the Petitioner was "misled with promises of leniency into giving his inculpatory statements." (App. 315; App. 306-18.) Appellate counsel also moved to be relieved as counsel. (App. 317.) On June 3, 2002, appellate counsel filed a brief with the Court of Appeals of South Carolina, contending "[a] remand to the lower court is in order since the indictment does not contain a true bill." (App. 320-28.) On July 2, 2002, the South Carolina Court of Appeals remanded the case for a hearing "on what action was taken by the grand jury, and therefore whether the trial court was vested with subject matter jurisdiction." (App. 330.) The matter was remitted to the trial court on July 18, 2002. (App. 422.)

The hearing on remand occurred on December 12, 2002, before the Honorable Daniel F. Pieper. (See App. 334-40.) Petitioner was present at the hearing and represented by Robert Dudek of the South Carolina Office of Appellate Defense and Jeffrey Bloom, Esquire. (App. 335.) The court heard testimony from Sharon Cato of the Berkeley County Clerk of Court's Office and Carla D. Hartley, foreperson of the grand jury of Berkeley County at the time of the at-issue indictment. (Id.) In an order dated December 19, 2002, Judge Pieper concluded the indictment was in fact "true-billed" and that the "Court of General Sessions for Berkeley County was vested with subject matter jurisdiction at the time of the trial of the [Petitioner] on Indictment 99-GS-08-963 on December 6, 1999." (App. 340.)

---

[1]Anders v. California, 386 U.S. 738 (1967).

2

Petitioner again appealed, and Assistant Appellate Defender Robert Dudek filed a Final Brief of Appellant on April 21, 2004. (App. 343-61.) In that brief, Petitioner raised the following issues on appeal:

> 1. Whether the court erred by ruling the state proved by clear and convincing evidence or otherwise that the court had subject matter jurisdiction where the indictment did not contain a "true-bill," it was irregular on its face, where the grand jury foreperson could not remember appellant's case, not all cases that term were true-billed, and where there were not any journals, minutes, or records of the actions of the grand jury?

> 2. Whether the court erred by ruling there was not an irregularity in the grand jury proceedings where it was undisputed that the bailiff instructed the foreperson of the grand jury on how to process the indictments, and his impermissible legal advice led directly to the indictment problems in this case?

(App. 346.) On January 13, 2005, the South Carolina Court of Appeals affirmed Petitioner's conviction in an unpublished per curiam opinion. (App. 384-87.) On January 28, 2005, appellate counsel filed a petition for rehearing, which was denied on February 17, 2005. (App. 394-400.)

On May 20, 2005, appellate counsel filed a Petition for Writ of Certiorari, raising the following questions:

> 1. Whether the Court of Appeals erred by ruling, prior to <u>State v. Gentry</u>, that the state proved by clear and convincing evidence or otherwise that the court had subject matter jurisdiction where the indictment did not contain a "true-bill," it was irregular on its face, where the grand jury foreperson could not remember petitioner's case, not all cases that term were true-billed, and where there were not any journals, minutes, or records of the actions of the grand jury?

> 2. Whether the Court of Appeals erred by ruling there was not an irregularity in the grand jury proceedings when it was undisputed that the bailiff instructed the foreperson of the grand jury on how to process the indictments, and his impermissible legal advice led directly to the indictment problems in this case?

(App. 403.) On August 15, 2006, the South Carolina Supreme Court entered an order denying the petition for writ of certiorari. (App. 420.) The matter was remitted to the lower court on August 17, 2006. (App. 423.)

3

On December 14, 2006, the Petitioner filed an application for post-conviction relief ("PCR"). (App. 232-66.) In his PCR application, Petitioner raised the following issues:

1. Did the trial court lack subject matter jurisdiction due to the elemental flaws in indictment 1999-GS-08-963?

2. Was counsel ineffective in failing to challenge indictment 1999-GS-08-963 based upon its elemental flaws?

3. Was the applicant denied a fair trial by the State's introduction of statements at trial in violation of <u>Miranda</u>?

4. Was counsel ineffective in failing to object to the State's improper bolstering of its case in chief?

(App. 244.)

On November 7, 2008, an evidentiary hearing was held before the Honorable R. Markley Dennis, Jr. (App. 275-96.) Petitioner was present and represented by Charles T. Brooks, III, Esquire. In an order dated December 12, 2008, Judge Dennis denied the application for post-conviction relief and dismissed the petition. (App. 297-304.) On December 19, 2008, through counsel, Petitioner filed a Notice of Appeal of the order denying his petition for post conviction relief. (App. 305.)

On August 26, 2009, M. Celia Robinson, Esquire, of the South Carolina Commission on Indigent Defense, filed a petition for writ of certiorari on behalf of Petitioner. In that petition, Petitioner raised the following issues:

1. Did the PCR judge err in denying petitioner's motion to hold the State in default on the basis of its failure to timely respond to the petitioner's Application for relief?

2. Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel in that he failed to protect the defendant by objecting to the solicitor's inflammatory remarks attacking the character of the accused on closing?

4

(Pet. for Writ of Certiorari at 2.) The Supreme Court of South Carolina entered an order denying the petition on December 3, 2010. The matter was remitted to the lower court on December 21, 2010.

The Petitioner then filed the instant habeas action raising the following grounds for review:

> **Ground One**:[2] The court erred by ruling the state carried its burden of proving the court had subject matter jurisdiction. That burden of proof was by clear and convincing evidence. The indictment did not contain a "true-bill," and was irregular on its face. The foreperson of the grand jury had no specific recollection of this case, and not all of the indictments passed upon during that term were "true-billed." Further, there were not any minutes, reports or documents showing that the grand jury had indicted appellant. Even if the burden of proof were by a preponderance of the evidence, the state would still have failed to carry that burden. [See appendix page 344, 1.]
> **Supporting Facts**: Irregularities in the indictment were specifically discovered. Two separate indictments existed on the same offense. Petitioner asserts a true lack of subject matter jurisdiction existed within the case @ bar because of elemental flaws in the indictment.
>
> **Ground Two:** The court erred by finding the instructions and actions of the bailiff in this case did not constitute an irregularity in the grand jury proceedings. Hartley's testimony clearly showed the bailiff was the source of her legal advice and instruction in this case.
> **Supporting Facts**: The bailiff specifically instructed the foreperson on [how] to sign and affix legal terms of great significance to the indictments to clearly indicate the actions of the grand jury. Petitioner points out that the [b]ailiff is not qualified to answer legal questions, period. It is the [d]uty to call legal questions to the judge or other proper legal official for reply.
>
> **Ground Three**: Whether the trial judge erred by admitting appellant's statements as voluntarily and intelligently tendered where a police officer told appellant he was only going to be questioned about being an accessory to murder, at worst, and would not be charged at all if he gave truthful statements, since appellant's inculpatory statements, under the totality of the circumstances, were induced by promises of leniency?
> **Supporting Facts**: Petitioner refers to Appendix pages 311-314 "for relevant facts in support of this particular issue."

---

[2]Respondent lists Ground One as "Lack of Subject Matter Jurisdiction." (Mem. in Supp. of Mot. for Summ. J. at 10.)

**Ground Four**: Was the Petitioner denied a fair trial by the State's introduction of statements at trial in violation of <u>Miranda</u>?
**Supporting Facts**: Petitioner refers to Appendix pages 256-57 "for specific detailed relevant facts."

**Ground Five**: Was counsel ineffective in failing to object to the State's improper bolstering of its case in chief? Cited on page 261 of Appendix.
**Supporting Facts**: See Appendix page 261 for relevant facts.

**Ground Six**: Appointed counsel ineffective for failing to object or otherwise challenge that malice can be inferred from use of a weapon which was repeated to the fact finders.
**Supporting Facts**: Petitioner's trial transcripts depict the trial judge's confusing and prejudicial malice jury instruction. Trial counsel failed to adequately raise and exhaust this issue to the high court beyond Petitioner's control.

(Dkt. No. 1.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." <u>The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.</u>, 597 F.3d 570, 576 (4th Cir. 2010) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" <u>Id</u>. (quoting <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999)); <u>see also Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

6

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 410.

**Exhaustion and Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

7

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 201; SCAR 207; SCAR 208; Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for PCR. S.C. CODE ANN. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. CODE ANN. §

8

17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. CODE ANN. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977); Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural Bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a

prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

If a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. Murray v. Carrier, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997)(citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996)).


D. Cause and Actual Prejudice

10

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of a particular claim, or show interference by state officials. Id.

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

## DISCUSSION

Respondent moved for summary judgment on all of Petitioner's grounds for relief. (See Dkt. No. 21; Dkt. No. 20.) The undersigned will address all of Petitioner's grounds in turn.

### A. Ground One: Lack of Subject Matter Jurisdiction

Petitioner's first ground for relief in the instant habeas petition is that the trial court lacked subject matter jurisdiction due to "elemental flaws in the indictment." (See Pet.) Respondent seeks summary judgment on this claim, contending that "[a]llegations involving subject matter jurisdiction rest on substantive law and are not cognizable in a federal habeas action." (Mem. in Supp. at 12.)

11

The undersigned agrees that Respondent is entitled to summary judgment on Ground One of Petitioner's habeas petition because "[f]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (internal quotation marks and citations omitted).[3] Indeed, federal habeas relief is only available when the alleged error was based on a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) (holding jurisdiction is a matter of state law); Von Longmore v. South Carolina, No. C.A. 9:05-CV-2112-MBS, 2006 WL 2827416, at * (D.S.C. Sept. 27, 2006) ("Petitioner is not entitled to federal habeas relief because the subject matter jurisdiction of a state trial court is a state law issue."). The undersigned therefore recommends granting Respondent's Motion for Summary Judgment with respect to Ground One of the Petition.

**B. Ground Two: Actions of Bailiff**

In Ground Two, Petitioner contends he is entitled to relief because the "bailiff . . . instructed the foreperson on [how] to sign and affix legal terms of great significance to the indictments to clearly indicate the actions of the grand jury" and further asserts that the bailiff "is not qualified to answer legal questions." (Pet.) Respondent moved for summary judgment on this claim.

In a footnote of his order issued after a remand by the Court of Appeals of South Carolina, Judge Pieper addressed this issue, stating,

> The appellant argued that the grand jury proceeding was irregular due to a Berkeley County bailiff's alleged instruction of Ms. Hartley[, the grand jury foreperson]. Ms. Hartley testified that a bailiff escorted all grand jury witnesses into the grand jury room. She testified that the bailiff told her where to sign and how to proceed within the first few minutes of her service as a grand jury foreperson. She stated that the bailiff then left the room. She also verified that this person was not present during any deliberations and that the instructions

---

[3]Out of an abundance of caution, Respondent also addressed the merits of this ground for relief.

> were only general and not specific as to each indictment. The procedure for publication of the bills of indictment varies from county to county and no one procedure is more or less effective than another. *Grimm, supra*. The court finds no impropriety in the bailiff's actions and no irregularity in the proceedings.

(App. 339 n.2.) On appeal, the South Carolina Court of Appeals addressed the issue as follows:

> During the hearing on remand, there was . . . testimony that the bailiff provided directions to the grand jury foreperson. Byers argues such direction constitutes active participation by the bailiff in the grand jury process, and that advice to the grand jury should only come from a judicial official. After a thorough review of the record, we find the bailiff's directions were administrative in nature and made necessary by the fact that the normal grand jury foreperson was absent. The directions were given within the first few minutes of the grand jury coming together, and the foreperson made it clear in her testimony that the bailiff was never a part of deliberations. We find these actions to have caused no prejudice.

(App. 386.)

Respondent contends she is entitled to summary judgment on Ground Two, arguing the Petitioner erroneously relies on State v. Bramlett, 166 S.C. 323, 164 S.E. 873 (1932), "to suggest it was error which *divested the trial court of jurisdiction* for a bailiff to advise the foreperson where to sign an indictment indicating the grand jury's action." (Mem. in Supp. of Mot. for Summ. J. at 22.) Respondent asserts that, under State v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005), "and its progeny, . . . this is not the case." (Mem. in Supp. at 22.) Respondent further contends "Petitioner's assertion is in error when he asserts" the bailiff was "'answering a legal question' by the grand jury." (Id. at 23.)

On the face of his Petition, Ground Two simply states "See Appendix page 344, 2." (Dkt. No. 1.) Petitioner refers to the second issue raised in his brief dated April 21, 2004, wherein counsel for Petitioner argues,

> Given the lack of any grand jury records, the foreperson's lack of any specific recollection of appellant's case, the fact that not all . . . cases during that term were true-billed, and the bailiff's legal advice to a substitute, inexperienced

13

> foreperson dependant upon legal advice, appellant's conviction should be vacated for lack of proof of subject matter jurisdiction, and because it was based on irregular grand jury proceedings.

(App. 359.)

To the extent Petitioner again contends he is entitled to relief because the trial court lacked subject matter jurisdiction, that claim is not cognizable on habeas review for the reasons discussed above. See Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998). Moreover, it is not clear whether Petitioner contends he is entitled to relief on Ground Two pursuant to 28 U.S.C. § 2254(d)(1) or (d)(2). See 28 U.S.C. § 2254(d). Petitioner does not identify how the state court's determination of Ground Two "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Presumably Petitioner argues the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. § 2254(d)(2). The undersigned disagrees. In this habeas proceeding, "a determination of a factual issue made by the State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (noting the petitioner "may obtain relief only by showing the [state court's] conclusion to be an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Thus we presume the [state court's] factual findings to be sound unless [the petitioner] rebuts the presumption of correctness by clear and convincing evidence." (internal quotation marks and citations omitted)). The South Carolina Court of Appeals found that "the bailiff's directions were administrative in nature and made necessary by the fact that the normal grand jury foreperson was absent." (App. 386.) The state court also concluded that the bailiff's directions "were given within the first few minutes of the grand jury coming together,

14

and the foreperson made it clear in her testimony that the bailiff was never a part of deliberations." (Id.) Petitioner has not rebutted the presumption of correctness via clear and convincing evidence. The undersigned therefore concludes that regardless of whether Petitioner argues entitlement to relief pursuant to § 2254(d)(1) or § 2254(d)(2), Respondent is entitled to summary judgment on Ground Two.

**C. Grounds Three and Four: Admission of Petitioner's Statements**

In Ground Three, Petitioner claims entitlement to habeas relief because "the trial judge erred by admitting [Petitioner's] statements as voluntarily and intelligently tendered where a police officer told [Petitioner] he was only going to be questioned about being an accessory to murder, at worst, and would not be charged at all if he gave truthful statements." (Dkt. No. 1.) Petitioner claims his inculpatory statements were induced by promises of leniency. (Id.) Similarly, in Ground Four, Petitioner claims he was denied a fair trial "by the State's introduction of statements at trial in violation of Miranda." Because Ground Three and Ground Four involve the same issue, the undersigned considers them together.

In her Motion for Summary Judgment, Respondent asserts that "[f]irst, it is evident, as found by the trial court, . . . the statements were not induced by any promise of leniency." (Mem. in Supp. of Mot. for Summ. J. at 33.) Respondent further "submits that the state trial courts' rulings that Byers's statements were voluntary were neither contrary to, nor involved an unreasonable application of[,] clearly established Federal law." (Id. at 34 (citation and internal quotation marks omitted)).

In Petitioner's Response in Opposition to Respondent's Motion for Summary Judgment, Petitioner again asserts his statements should not have been admitted at trial. (See, e.g., Dkt. No. 27 at 3.) More specifically, Petitioner states, "Had Petitioner not been manipulated to provide information by Police Interrogators, coupled with Petitioner's written

15

statements and alleged tape recordings, Petitioner would not be serving a life sentence."

(Id.) He asserts he was "coerced" and that "he was indeed led by the Police with promises

and threats." (Id.) He reiterates that "[i]t is prejudicial to petitioner for an Officer of the law

to obtain a statement by making an expressed or implied promise of leniency." (Id.)

It is inappropriate for an officer to obtain a statement from a suspect by making an

express or implied promise of leniency. See Brady v. Maryland, 397 U.S. 742, 753 (1970);

Malloy v. Hogan, 378 U.S. 1, 7 (1964); Thai v. Mapes, 412 F.3d 970, 979 (8th Cir. 2005).

In the instant case, Judge Pieper conducted a Jackson v. Denno, 378 U.S. 368 (1964),

hearing on December 7, 1999. (App. 83-121.) The statements at issue in that hearing were:

(a) one taped statement from February 9, 1998; (b) a written statement from February 10,

1998; and (c) two taped statements from December 14, 1998. (App. 87.) At the Jackson v.

Denno hearing, Deputy Sheriff John Plitsch of the Berkeley County Sheriff's Office testified

he first met with Petitioner in Shelby, North Carolina, in February of 1998. (App. 87-88.)

Plitsch testified that he met Petitioner at a relative's house in Shelby and that Petitioner was

not detained or taken into custody at the relative's house. (App. 88-89.) According to Plitsch,

Petitioner agreed to accompany officers to the Shelby Police Department, and Petitioner

"was advised that he–did not have to go with us [(the police)], . . . was advised of the

investigation of a homicide and that he was free to leave at any time." (App. 89.) The

following exchange occurred:

> Q. And what did you tell [Petitioner] prior to your conversation at the police
> department?
>
> A. Of course, he was aware of the investigation, that we wanted to interview
> him, to obtain some information concerning the homicide of Mr. Ellis; that we
> believed that he had information concerning the homicide. That he was
> advised at that time that he wouldn't–if he was truthful with us, and he was not
> present at the time of the other homicide, that we would not charge him with
> any accessories, etcetera.

(App. 89-90.) Plitsch testified that Petitioner agreed to speak with him and told Plitsch that a week prior to the death of the victim, Petitioner accompanied Clarence Gregory to Drake's Pawn Shop where Petitioner purchased a Remington 243 rifle for Gregory in exchange for $25.00 and some liquor. (App. 90.) This conversation between Plitsch and Petitioner was recorded. (App. 93.)

Plitsch testified that the following day–February 10, 1998–he saw Byers again because Byers agreed to accompany police to a car rental place in Rock Hill. (App. 94.) Plitsch stated, "According to Mr. Byers, the day of the death of Mr. Ellis, he accompanied Mr. Clarence Gregory to Rock Hill and assisted him in renting a Dodge Caravan." (Id.) Plitsch testified that when Byers agreed to go to Rock Hill, Byers was not in custody and had not been arrested. (Id.) Plitsch stated that he took a written statement from Byers that day and that Byers agreed to give the statement, was not promised anything on that day, and was not threatened in any manner. (App. 95.) Plitsch described the contents of the written statement:

> Basically, what's in the statement is what we previously spoke about the day before was that he assisted Mr. Clarence Gregory in purchasing a 243 rifle.
> It further states that he–He shot the gun on two occasions at least, with Mr. Gregory in some woods. That he assisted Mr. Gregory in renting a van in Rock Hill, and also the following day of the homicide, he assisted Mr. Gregory in obtaining a gun from the west-end community of Gaffney, South Carolina, from a–from a vacant house, if you will, that was hidden under some leaves.

(Id. at 96.) Plitsch testified that there was never any attempt that day to place Petitioner in custody, and at the end of the day, the officers dropped Petitioner off at Food Lion in Shelby at Petitioner's request. (Id. at 96-97.)

Plitsch testified that the next time he saw Byers was in December of 1998, when Byers initiated a conversation with him. (Id. at 97.) Plitsch stated that he and another detective were at the Charleston County Detention Center on an unrelated matter when

17

Byers "hailed" Plitsch down. (Id.) Plitsch testified that he did not recognize Byers at first and

that Byers reminded him that he had spoken with Byers in Shelby in the months prior. (Id.)

According to Plitsch, Byers told him that he had not been truthful "during his first visit" and

that Byers wanted to talk to Plitsch to "bring Mr. Clarence Gregory to justice." (Id. at 98.)

Plitsch testified that they then transported Byers from the Charleston County Detention

Center to the Berkeley County Sheriff's Office. (Id.) Plitsch indicated since this situation was

a custodial one, Plitsch advised Byers of his constitutional rights using a Berkeley County

Sheriff's Department Defendant's statement form. (Id. at 99.) Plitsch testified he read the

form to Byers, that Byers appeared to understand his constitutional rights, that Byers

initialed by each warning, and that Byers voluntarily waived his rights and agreed to make

a statement to Plitsch. (Id. at 99-100.) Plitsch gave the following testimony:

> Q. What did you say–or did you say anything to him with regard to his earlier
> February statement to you?
> A. Uh, can you be more specific? I'm sorry.
> Q. Did you indicate anything about what you believed about the February
> statement? Did you tell–
> A. Well, during the–during the interview with Mr. Byers, he had indicated that
> he did know about the planning of the murder, that he participated in the
> planning of the murder; however, he told me that he was not present at the
> time.
>     I told him, during that time, that I didn't–I believed that he was there,
> and he stated that he was there, at that point.
> Q. And that was in the December statement–
> A. Yes, it was.
> . . .
> Q. And what basically on December 14th, 1998, did Mr. Byers tell you?
> A. Mr. Byers advised me that he, uh, he did participate with Clarence Gregory
> in the planning of the–killing Mr. Ellis; that he was supposed to receive from
> Clarence Gregory five thousand dollars ($5,000.00), plus all the liquor and
> drugs he wanted to carry out the homicide.
>     He stated that he, of course, purchased the rifle; that he assisted in
> renting the van, and that he did accompany Mr. Clarence Gregory to the
> church in Huger, South Carolina.
> Q. And he indicated he was there when the gunshot was fired?
> A. Yes.

(Id. at 101-02.)

Plitsch testified that he spoke to Byers a second time on December 14, approximately twenty minutes after speaking the first time, in order to "clarify the voluntariness of the statement that he provided me." (Id. at 103.) Plitsch testified that he "wanted to clarify . . . how [they] came upon meeting with each other at the Charleston County Detention Center; whether or not he was threatened in any way, promised, and also whether or not he understood at that point that it wasn't quite accessory at that point when he told me that he was actually present." (Id.)

On cross-examination of Plitsch concerning the December statements, the following colloquy occurred:

> Q. [Petitioner] told you he was present and he gave you other details, before you ever put him on tape, correct?
> A. That is correct.
> Q. And at that time, you told him, "I fully understand each of these rights. They have been explained to me and having these rights in mind, I wish to waive these rights and answer questions concerning the charge of accessory to murder.",–
> A. That is correct.

(Id. at 110.) Plitsch testified to the same facts when he was called as a witness in the trial. (App. 178-225.)

Petitioner's counsel argued Byer's statements were induced by promises that police would–at most–charge him with accessory to murder. (Id. at 117.) The trial judge rejected the attorney's argument and stated,

> I find that the [Petitioner's] statements were freely and voluntarily given, without promise, duress, coercion or undue influence.
> I further find that in regard to any statement arising from custodial interrogation of the [Petitioner] was accorded all of the safeguards and rights afforded by Miranda v. Arizona.
> I find that the [Petitioner] understood these rights and freely, voluntarily and intelligently waived these rights under the Fifth and Sixth Amendments to the United States Constitution.
> Some of your arguments, you, of course, will be able to make to the jury, in regards to the voluntariness of the confession. The burdens are different at this stage of the proceeding.
> I find that it is admissible.

19

> Of course, they'll have to prove, beyond a reasonable doubt that the statement was made voluntarily.

(Id. at 119-20.)

Although Petitioner appears to have originally raised the issue of the introduction of his statements in his direct appeal, the Court of Appeals did not address it in its opinion after remand. (See App. 384-87.) Petitioner did raise this issue in his PCR application, but the PCR judge rejected it and stated as follows:

> The Applicant alleged that he was denied a fair trial by the State's introduction of statements at trial in violation of Miranda. This Court finds that counsel properly requested a Jackson v. Denno hearing to challenge the Applicant's statements to police. Judge Pieper found that the statements were freely and voluntarily given. Moreover, this Court finds that the allegation of Miranda violation raises a direct appeal issue that is procedurally barred by S.C. Code Ann. § 17-27-20(b) (2003). Post-conviction relief is not a substitute for a direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1974). A post-conviction relief application cannot assert any issues that could have been raised at trial or on direct appeal. Ashley v. State, 260 S.C. 436, 196 S.E.2d 501 (1973). The Applicant could have raised this issue at trial or on appeal. His failure to do so has waived this allegation as a ground for relief. Accordingly, this allegation is denied and dismissed.

(App. 302-03.)

As noted above, before a petitioner may obtain federal habeas relief, he must first exhaust his state remedies. 28 U.S.C. § 2254(b)(1). A claim is not exhausted until the petitioner has "fairly presented" his claim to the state's highest court. Picard v. Connor, 404 U.S. 270, 275-78 (1971). If a petitioner's claims were not raised to the South Carolina Supreme Court, a federal habeas court is precluded from reviewing those claims unless cause and actual prejudice, or actual innocence, is shown by the petitioner. Coleman v. Thompson, 501 U.S. 722 (1981); Tucker v. Moore, 56 F. Supp. 2d 611, 615 (D.S.C. 1999). Here, the undersigned concludes that Petitioner is procedurally barred from raising the Miranda claim in the instant habeas petition because this issue was never raised to the South Carolina Supreme Court. See Ward v. McLeod, No. 3:01-0012-25BC, 2002 WL

31996018, at *4 (D.S.C. Apr. 18, 2002) ("When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim."). Indeed, even the PCR judge refused to consider the <u>Miranda</u> claim on that basis. (App. 302-03.) The undersigned therefore recommends finding Ground Three and Ground Four are procedurally barred, and that there is no cause and prejudice or a fundamental miscarriage of justice. <u>See Fisher v. Angelone</u>, 163 F.3d 835, 844 (4th Cir. 1998) ("It is well established that, absent cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default, a federal habeas court may not review a claim when a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule."). Respondent is therefore entitled to summary judgment on these grounds.

**D. Grounds Five and Six: Ineffective Assistance of Counsel**

In Ground Five, Petitioner claims his trial counsel was ineffective "in failing to object to the State's improper bolstering of its case in chief." (Dkt. No. 1.) In Ground Six, he claims trial counsel was "ineffective for failing to object or otherwise challenge that malice can be inferred from use of a weapon." (<u>Id</u>.)

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. <u>Id</u>. at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. <u>Id</u>. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

that, under the circumstances, the challenged action might be considered sound trial strategy. Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id.

In Ground Five, Petitioner contends his trial counsel was ineffective in failing to object to the prosecution's reference to the Petitioner as a liar and cold-blooded killer in the prosecution's closing arguments. Petitioner contends the solicitor "referred to and called the [Petitioner] a liar ten (10) times before the jury" and called Petitioner "a cold-blooded killer on many occasions." (App. 261.)

The PCR judge addressed this claim, noting that Petitioner's trial counsel "testified that he did not believe the solicitor's closing remarks were inflammatory." (Id. at 299.) Petitioner's trial counsel also testified at the PCR hearing that "the solicitor stated several times that the [Petitioner] lied to police, which was a part of [Petitioner's] own admission." (Id. at 299-300.) In rejecting Petitioner's ineffective assistance claim, the PCR judge stated, in his written order:

> This Court finds that counsel's testimony was credible while also finding that Applicant's testimony was not credible. This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on numerous occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's version of the facts, and possible defenses or lack thereof. This Court finds that counsel was prepared for trial. Counsel did not object to the solicitor's closing remarks because he did not find them inflammatory, and this Court finds that counsel's failure to object did not depart from an objective standard of reasonableness. This Court finds that the evidence against Applicant was compelling.

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds that Applicant's attorney demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in his representation of the Applicant. The applicant failed to show that counsel's performance was deficient. This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by plea counsel's [sic] performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

(App. 301-02.)

The undersigned has reviewed the solicitor's statements to which Petitioner now objects. The solicitor stated, *inter alia*,

What do we know absolutely by [Petitioner's] own admission . . . ? Well, we absolutely, positively know this that he will lie to the police to protect himself. You know he was a suspect from the very beginning of '94 when they figured out that he pawned this high powered rifle and lived with the man who had taken out the life insurance policy on the victim. So the police went to him and what did he do? He lied. . . . They talked to him the next day, and what did he do that day? He lies to the police again. And we know that. We absolutely, positively know he will lie to the police, because who told us that? The Defendant in his third statement.

(App. 22.) The solicitor also stated several times that "this is cold-blooded." (See, e.g. App. 27.)

The state court's determination that trial counsel was not ineffective in failing to object the solicitor's reference to Petitioner as a "liar" and "cold-blooded" is not contrary to or an unreasonable application of clearly established federal law. Improper vouching occurs when

23

a prosecutor either (1) bluntly states a personal belief in a witness' credibility that places the prestige of the prosecutor's office behind that witness, or (2) implies that the witness' testimony is corroborated by evidence known to the prosecutor but not the jury. United States v. Young, 470 U.S. 1 (1985); United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993). Neither occurred in the case *sub judice*. Moreover, the fact that the solicitor called Petitioner a "liar" and "cold-blooded" does not warrant habeas relief, especially where, like here, Petitioner stated to police that he had not told the truth, and evidence supported the prosecution's theory of the murder. See United States v. Cooper, 827 F.2d 991, 995 (4th Cir. 1987) (using the term "liar" was improper, but "not reversible error); United States v. Pungitore, 910 F.2d 1084, 1127 (3d Cir. 1990) (finding no prosecutorial misconduct in the prosecutor's reference to the appellant as a "cold-blooded murderer" because this was a "fair comment on the evidence adduced at trial"); Moore v. United States, 934 F. Supp. 724, 726- (E.D. Va. 1996) (finding the petitioner's claim that counsel was ineffective for failing to object to the prosecutor's statement that the petitioner and his brother "lied" on the witness stand did not satisfy either prong of Strickland); Yaitsky v. United States, No. 2:04-cr-1097-PMD, 2008 WL 3845446, at *23-24 (D.S.C. Aug. 18, 2008) (petitioner was not entitled to habeas relief pursuant to 28 U.S.C. § 2255 where she claimed counsel was ineffective for failing to object when the prosecutor called her a liar during closing argument). Because Petitioner has not shown that the state court's determination of the issue in Ground Five (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence, the undersigned recommends granting summary judgment to Respondent on Ground Five.

As noted above, Petitioner claims in Ground Six that his trial counsel was "ineffective for failing to object or otherwise challenge that malice can be inferred from use of a

weapon." (Dkt. No. 1.) Petitioner further states, "Petitioner's trial transcripts depict the trial judge's confusing and prejudicial malice jury instruction. Trial counsel failed to adequately raise and exhaust this issue to the high court beyond Petitioner's control." (Id.) Respondent moved for summary judgment on this claim, stating that the instant petition is the first time Petitioner has claimed that "his instruction in 1999 was confusing and prejudicial." (Mem. in Supp. at 47.) Respondent further asserts that Petitioner did not raise this issue of ineffective assistance of counsel either at the state PCR proceeding or in the PCR appeal. (Id.) Respondent contends she is entitled to summary judgment on Ground Six because this issue "has never been raised in state court by the Petitioner" and cannot be raised in state court now "because it was not timely raised in the state PCR action." (Id.) Respondent therefore asserts the claim in Ground Six is "barred from federal habeas corpus consideration." (Id.)

The undersigned agrees with Respondent. Petitioner did not argue on direct appeal that the jury instructions were flawed, nor did Petitioner argue this claim of ineffective assistance of counsel at any time during his PCR proceedings or PCR appeal. The undersigned concludes there is no showing of cause and prejudice or a fundamental miscarriage of justice. Because Petitioner has not presented this claim to the South Carolina Supreme Court, Petitioner may not now obtain habeas relief on this ground. See Coleman v. Thompson, 501 U.S. 722 (1981); Tucker v. Moore, 56 F. Supp. 2d 611, 615 (D.S.C. 1999). The undersigned therefore recommends granting Respondent's Motion for Summary Judgment with respect to Ground Six of the habeas petition.

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 21) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

November 21, 2011
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).